IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SCOTT HARE HUNDLEY, ) | CIVIL ACTION NO. 9:14-4115-BHH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                            ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")[1] on September 21, 2010 (protective filing dates), alleging disability beginning January 1, 1982,[2] due to post-traumatic stress disorder (PTSD), social phobia, anxiety, arthritis in his ankles, back problems, and wrist problems. (See R.pp. 20, 129, 137, 187). Plaintiff's claims were denied

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005); see also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

[2]Plaintiff later amended his alleged onset date to June 30, 2002. (R.p. 20, 251).



both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 9, 2013 (R.pp. 48-65). The ALJ thereafter denied Plaintiff's claims in a decision issued February 22, 2013. (R.pp. 20-42). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-7).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Synopsis of Medical History/Background Information

Plaintiff has been diagnosed with bipolar disorder, social anxiety disorder, probable PTSD, and polysubstance abuse. (R.p. 3273, 3276, 3282). In addition to Plaintiff having a history of alcohol abuse, the medical record also contains notations of cocaine, amphetamine, marijuana, heroin, opiate, and benzodiazepine abuse. (See R.pp. 412, 2927, 3917, 3996).

Since Plaintiff served in the United States Navy from December 1978 to August 1979 (R.p. 671), he has obtained much of his medical care from the Veterans Administration Medical Center (VAMC). In February 2011, Dr. Lydiard, a psychiatrist with the VAMC in Charleston, wrote that Plaintiff had recently been discharged from hospitalizations in December 2010 and February 2011 with diagnoses of bipolar I disorder, severe social anxiety disorder, PTSD, and severe episodic alcohol abuse. Plaintiff reported that the pattern for his periodic drinking was generally an onset of mania, often preceded by worsened social anxiety symptoms of binge alcohol abuse over two to seven days, stopping his medications such as antabuse, and that he "comes in" when he is out of money or sick from drinking. (R.p 1347). In June 2012, Dr. Lydiard noted that Plaintiff had been hospitalized



thirty times since 2001 for suicidal ideation in association with drug and/or alcohol abuse. (R.p. 3273). He opined that Plaintiff's "mania and social anxiety both fuel [his] substance abuse; social anxiety promotes urge to use alcohol and interferes with [Plaintiff's] ability to participate in 12-step programs with return to alcohol use" and "PTSD-related hostility is provoked when [Plaintiff] is put [in a] pressure situation socially." (R.pp. 3263, 3273).

From May 8 through 22, 2012, Plaintiff was hospitalized in the mental health ward of the VAMC by order of Dr. Christopher Pelic as a result of suicidal ideation (R.pp. 2920-2927). After his release, Plaintiff entered the Second Chance Recovery Home, a VA assisted living facility that required attendance at Alcoholics Anonymous meetings. (R.pp. 3273-3282). Dr. Lydiard also prescribed monthly injections of Vivitrol (Naltrexone) to help curb Plaintiff's cravings for alcohol, and Plaintiff reported benefits from these injections. (R.pp. 3210, 3260, 3264, 3266). By August 2012, it was noted that Plaintiff was in a VA work assistance program and was planning to attend technical college. (R.p. 3210).

On January 13, 2013, Dr. Lydiard completed a questionnaire from Plaintiff's attorney in which he noted that Plaintiff had been his patient since April 2009 for treatment of bipolar disorder, social anxiety, and alcohol abuse, and that Plaintiff's condition had existed since June 2000. Dr. Lydiard opined that Plaintiff's disturbance of mood, accompanied by full or partial manic or depressive syndrome, resulted in marked restrictions of activities of daily living and in maintaining social functioning; deficiencies of concentration persistence or pace; and repeated episodes of decompensation, each of extended duration; and that Plaintiff's chronic affective disorder resulted in repeated episodes of decompensation, each of extended duration and a current history of one or more years inability to function outside a highly supportive living arrangement with an indication of



continued need for such an arrangement. He further opined that Plaintiff's bipolar disorder, PTSD, and severe social anxiety collectively increased Plaintiff's risk for alcohol abuse; the endpoint for worsening of these conditions was return to alcohol abuse; that Plaintiff was unable at that time to function reliably; and that he was disabled by this combination of disorders. Dr. Lydiard further wrote that "[b]ipolar disorder was not recognized for some years and alcohol was considered - incorre[c]tly - to be primary." (R.pp. 3185-3186).

## Discussion

A review of the record shows that Plaintiff, who was forty-two years old on his amended alleged disability onset date, has a high school education and past relevant work experience doing maintenance. (R.pp. 35, 129, 188). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that for the time period of June 30, 2002 through May 31, 2012, Plaintiff suffered from the "severe" impairments[3] of substance abuse disorder, degenerative disc disease, bipolar disorder, and PTSD (R.p. 24), and that when all of Plaintiff's impairments were considered, Plaintiff was disabled because

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).



his impairments met the criteria of the Listings of Impairments[4] at 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (R.p. 25). However, the ALJ also found that if Plaintiff stopped his substance abuse, he did not have an impairment or combination of impairments that met or medically equaled any of the Listings during this time (R.pp. 27-29), and further that if Plaintiff stopped his substance use he retained the residual functional capacity ("RFC") to perform medium work[5] with no exposure to pulmonary irritants, unprotected heights or dangerous machinery, and limited to the performance of simple, repetitive tasks involving no contact with the general public and no fast-paced production environment. (R.p. 29). Although the ALJ determined that these limitations still rendered Plaintiff unable to perform any of his past relevant work (R.p. 35), the ALJ obtained testimony from a vocational expert ("VE") and found at step five that, if Plaintiff stopped his substance abuse, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform even with these limitations, and that he was therefore not entitled to disability benefits during the period at issue. (R.pp. 35-36). As part of this finding, the ALJ concluded that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability for the period from June 30, 2002, through May 31, 2012, such that Plaintiff was not disabled at any time from the amended alleged onset date through May 31, 2012. (R.p. 36).

With respect to the period beginning June 1, 2012, the ALJ found that although Plaintiff continued to have the same severe impairments (substance abuse disorder, degenerative disc

---

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.

[5]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



disease, bipolar disorder, and PTSD), he no longer had an impairment or combination of impairments that met or equaled the severity of one of the Listings (R.p. 36). This was because the ALJ found that medical improvement occurred as of June 1, 2012, based on Plaintiff's testimony and medical evidence that his alcohol and substance abuse had been in remission since June 2012. Plaintiff's medical improvement was found to be related to Plaintiff's ability to work because Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the severity of a listing. (R.p. 38). The ALJ then found that beginning June 1, 2012, Plaintiff had the RFC to perform medium work except that he could have no exposure to pulmonary irritants, unprotected heights, or dangerous machinery, and was limited to the performance of simple, repetitive tasks involving no contact with the general public and no fast-paced production work. (R.p. 38). At step four, the ALJ again found that these limitations rendered Plaintiff unable to perform his past relevant work (R.p. 40), but found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy and was therefore not disabled from June 1, 2012 through the date of the decision.

Plaintiff asserts that in reaching this decision, the ALJ erred in his conclusion that Plaintiff would not have been disabled for the period of June 30, 2002 though May 31, 2012 if not for his polysubstance abuse, because the ALJ failed to properly apply the relevant statutory provisions or follow the relevant case law governing such a determination.[6] Specifically, Plaintiff argues that

---

[6]The ALJ's finding with respect to the period after June 1, 2012 (that Plaintiff was no longer disabled after that time) is not before the Court for review. Plaintiff does not address that finding in his brief, and only argues that the decision should be reversed because "the ALJ fails to provide such evidence which would support his conclusion that if not for [Plaintiff's] polysubstance abuse, none of his other impairments would have risen to a level of severity sufficient enough to support a ruling that he was disabled". Plaintiff's Brief, p. 27. The Commissioner also does not address this issue
(continued...)

7



the ALJ failed to properly apply the applicable law, including 20 C.F.R. § 404.1535 and SSR 13-2p, when determining whether Plaintiff's substance use disorder was a contributing factor material to the determination of disability. He asserts that the ALJ erred because there is no way to segregate his polysubstance abuse from his other mental/emotional impairments based on his multiple hospitalizations and the findings of treating psychiatrist Dr. Lydiard. Additionally, Plaintiff argues that the ALJ failed to properly consider his periods of abstinence under SSR 13-2p in determining that he was not disabled. After a careful review and consideration of the arguments presented, for the reasons set forth hereinbelow the undersigned is constrained to agree with the Plaintiff that the Commissioner committed reversible error with respect to the evaluation of Plaintiff's polysubstance abuse through the period ending May 31, 2012 and whether it was a factor material to the finding of disability, requiring a reversal of that part of the decision with remand for further proceedings.

"An individual shall not be considered to be disabled ... if alcoholism or drug addiction would ...be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether drug addiction or alcoholism is a contributing factor which is material to the determination of disability, the SSA regulations provide:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

---

[6](...continued)
(the period after June 1, 2012) in her brief.



>(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
>(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).  The claimant bears the burden of proof regarding the relevance of any drug addiction or alcoholism to his disability determination.  See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012); Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007); SSR 13-2p.

Although the Fourth Circuit has not specifically addressed the issue, other circuits and district courts within this circuit have found that before evaluating whether polysubstance abuse is a contributing fact to a finding of disability, the ALJ must first conduct the regular five-step disability inquiry[7] to determine if a claimant is disabled, including as part of this inquiry the impact of any alcoholism or drug addiction.  It is only after that point, if the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," that the ALJ then proceeds under § 404.1535 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs."  20 C.F.R §§ 404.1535, 416.935; see Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir.

---

[7]The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to his past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

9



2001); Fennell v. Astrue, No. 4:09-3051-JFA-TER, 2011 WL 1049094, at *4 (D.S.C. Mar. 21, 2001); Puffenbarger v. Commissioner, No. 1:09CV77, 2010 WL 3521583, at *3 (N.D.W.Va. Sept. 7, 2010). Stated another way, if the ALJ finds that a Plaintiff's condition is disabling, he is then required to determine whether the Plaintiff's alcohol and substance abuse was a contributing factor material to the determination of disability, as disability due to drug addiction and alcoholism is not a proper basis for an award of benefits under the Social Security Act if the addiction is a contributing factor material to the determination of disability. 42 U.S.C. § § 423(d)(2)(c), 1382c (a)(3)(J); see also 20 C.F.R. § 416.935. See also Farkas v. Astrue, No. 11-242, 2012 WL 750547, at * 2 (M.D.Fl. Mar. 8, 2012)["The Regulations make clear that a finding of disability is a *condition precedent* to the application of [the law requiring a determination of whether alcohol or drug addiction is a contributing factor material to the determination of disability]"] (emphasis added).

Here, the ALJ stopped his evaluation of Plaintiff's impairments (including his substance abuse) at Step 3, after finding that Plaintiff's impairments met the Listing of Impairments. He then continued the sequential evaluation process at steps four and five only considering Plaintiff's non-substance abuse impairments. Although it is arguable that, since the ALJ's conclusion that Plaintiff' condition (including his substance abuse) met the requirements of the Listings, no further disability analysis under the five-step sequential process was required after that point, it is nevertheless readily apparent from a review of the case file that no evaluation of the materiality of Plaintiff's substance abuse using an SSR 13-2p analysis, which describes the requisite analysis to evaluate cases involving drug addiction and alcoholism (DAA), has ever been conducted in this case. The DAA materiality analysis as described in SSR 13–2p asks at step one whether the claimant has DAA. If yes, at step two the ALJ determines whether the claimant is disabled considering all the



impairments, including DAA. If the answer is yes, the third step asks whether DAA is the only impairment. If the answer is yes, then DAA is material and the claim is denied. If no, the ALJ then asks whether the other impairments are "disabling by [themselves] while the claimant is dependent upon or abusing drugs or alcohol?" If the answer is no, then DAA is material and the claim is denied. If the answer is yes, then the ALJ proceeds to step five and asks whether DAA causes or affects the claimant's medically determinable impairments. If the answer is no, then DAA is not material and the claimant is found disabled. If the answer is "[y]es, but the other impairment(s) is irreversible or could not improve to the point of nondisability," then the claimant is found to be disabled. If the answer is "[y]es, and DAA could be material," the ALJ then proceeds to a sixth step to determine whether the other impairments would "improve to the point of nondisability in the absence of DAA?" If the answer is yes, DAA is material and the claim is denied. If the answer is no, then the claimant is found to be disabled. SSR 13–2p.

      The ALJ did not consider the materiality of Plaintiff's substance abuse to a finding of disability using the SSR 13-2p analysis because it was not until after the time of the ALJ's decision (but prior to the Appeals Council's decision to deny review) that the SSA's Policy Interpretation Ruling describing the requisite analysis as a six-step framework went into effect (on March 22, 2013). See SSR 13–2p, 2013 WL 621536. Even so, it *was* in effect at the time the Appeals Council declined review, and thus was in effect prior to the Commissioner's decision becoming final. See Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004)[Commissioner's decision "became final" on the day the Appeals Council declined review]; 20 C.F.R. § 422.210 [A claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or of a decision by the Appeals Council when that is the final decision



of the Commissioner.]. However there is no indication that the Appeals Council considered the requirements of SSR 13-2p when it issued its decision denying review on August 20, 2014. (See R.pp. 1-3).[8]

Although Social Security Rulings do not carry the "force and effect of the law or regulations;" see Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984); they are "binding on all components of the Social Security Administration;" 20 C.F.R. § 402.35(b)(1); and given that SSR 13–2p discusses periods of sobriety[9] and provides guidance in evaluating mental illnesses, it is clearly relevant to the evaluation of Plaintiff's claim. However, even though Plaintiff argues as one of his grounds for reversal of the decision that the Commissioner erred in not evaluating his impairments under SSR 13-2p, the Commissioner fails to even address this argument in her brief. While the Commissioner may have argued (but did not) that the failure to consider this SSR is not grounds to reverse the decision because it only became effective after the ALJ's decision, in cases considering

---

[8] Although the Appeals Council order says that it applied "the laws, regulations and rulings in effect as of the date we took this action", this is form language routinely placed in Appeals Council decisions. No discussion or analysis of Plaintiff's substance abuse under SSR 13-2p is provided or even referenced. This Court is unable to properly review findings for substantial evidence relating to an issue or analysis not addressed by the ALJ where no discussion is provided other than from the ALJ. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; cf. Fennell, 2011 WL 1049094, at * 5.

[9] In considering periods of abstinence:

> the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.

SSR 13-2, 2013 WL 621536, at *12.



whether a different SSR, 12-2p (which provides guidance as to the evaluation of fibromyalgia), was applicable under similar procedural circumstances (i.e., where the ALJ's decision was issued prior to the effective date of the Social Security Ruling, but the SSR then became effective prior to the final decision of the Commissioner), a number of courts remanded those cases for reconsideration in light of that new SSR (12–2p).  See Johnson v. Colvin, No. 1:14cv149–WS, 2015 WL 1931218, at *11 (N.D.Fla. Apr. 27, 2015)(citing Dry v. Comm'r. Soc. Sec. Admin., Civil No. SAG–133168, 2014 WL 6983402 (D.Md. Dec. 9, 2014); Harris v. Comm'r, Social Sec., No. Civ. GLR–14–2220, 2015 WL 1036029, at *2 (D.Md. Mar. 9, 2015)(citing, inter alia, Lillard v. Comm'r, Social Sec., No. JKB–13–1458, 2014 WL 2004710 (D.Md. May 14, 2014); Kosyjana v. Comm'r, Soc. Sec. Admin., No. SAG–13–2838, 2014 WL 5308028, at *2 (D.Md. Oct. 15, 2014); Holman v. Colvin, No. 4:13–CV–00502–MHH, 2014 WL 4458902, at *4 - *5 (N.D.Ala. Sept. 8, 2014); Iles v. Colvin, No. CIV–13–221–F, 2014 WL 1330010 , at *4 (W.D. Okla. Mar. 31, 2014); Schuster v. Colvin, No. 13–cv–0718–WJM, 2014 WL 803461 (D.Colo. Feb. 28, 2014)); but see Stines v. Colvin, No. 3:13–CV–02172, 2014 WL 4272762, at *9 (M.D.Pa. Aug. 28, 2014) [remand not required where SSR 12–2p effective after ALJ's decision (Feb. 14, 2012) but before Appeals Council denied review (June 21, 2013)].  The undersigned finds the rationale used in those cases to be applicable to the facts and circumstances here, and therefore agrees with the Plaintiff that it was error for the Commissioner not to have considered Plaintiff's claim (for the relevant time period) using the analytical framework set forth in SSR 13-2p.

As such, this action should be remanded to the Commissioner to determine whether Plaintiff's substance abuse is a contributing factor material to the determination of disability in light of all of the evidence and applicable law, including whether Plaintiff's substance abuse was a material



factor in determining disability under the analytical framework of SSR 13-2p. With respect to the remainder of Plaintiff's claims of error (relating to the period June 30, 2002 through May 31, 2012),[10] the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 12, 2016
Charleston, South Carolina

---

[10] As previously noted, the separate decision of the Commissioner that Plaintiff had medical improvement as of June 1, 2012 and no longer had disabling impairments after that time (R.p. 38) has not been challenged or addressed in the briefs and is therefore not before the Court for review.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

15

